United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICIA L GREELY,
Plaintiff,

v.

ALBERT Z GREELY, JR., et al.,
Defendants.

Case No. 26-cv-01804-EKL

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 18

This action rises out of three asset transfers between Defendants Albert Z. Greely Jr. ("Albert") and Jenny Ying Lin Lu ("Jenny"). Albert's ex-wife, Patricia L. Greely ("Patricia" or "Plaintiff"), claims that Defendants made these transfers to shield Albert's assets from a divorce judgment that Patricia obtained in state court. Plaintiff alleges that these transfers constitute mail and wire fraud, thus establishing a pattern of racketeering activity to support a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c)-(d). Defendants move to dismiss the complaint, primarily arguing that Plaintiff does not plausibly allege that the transfers were part of a "scheme to defraud." Mot. to Dismiss, ECF No. 18 ("Motion"). The Court carefully reviewed the briefs and relevant law and heard argument on the motion. For the following reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's complaint is DISMISSED with leave to amend.

## I. BACKGROUND

### A. Factual Background

Plaintiff filed for divorce from Albert on October 31, 2018, in San Diego County Superior Court. Compl. ¶ 7, ECF No.1. After nearly five years of divorce proceedings, Plaintiff obtained a judgment against Albert on May 18, 2023, for $1,415,907 ("Judgment"). *Id.* ¶ 8. Together with interest, and after crediting payments received, Plaintiff is owed approximately $1,313,907. *Id.*

Albert conducted three asset transfers, which serve as the bases of Plaintiff's alleged RICO claim. First, on April 15, 2022, Albert liquidated his Nokia retirement accounts and transferred roughly $22,757 to Jenny's Citibank account ("Nokia Transfer"). *Id.* ¶ 9. Second, on February 9, 2024, Albert recorded a quitclaim deed, transferring 50% of his interest in a South Carolina property ("SC Property"), worth $207,500, to Jenny. *Id.* ¶ 11. Third, Albert transferred at least 8,333 shares of his Ayar Labs Inc. stock along with additional stock over the past four years to Jenny ("Stock Transfers"). *Id.* ¶ 13. The Stock Transfers are worth at least $400,000. *Id.* ¶ 14. Plaintiff alleges, on information and belief, that Jenny did not give Albert any consideration for the SC Property Transfer or the Stock Transfers. *See id*. ¶¶ 12, 14. Since the SC Property Transfer used mail, and the Nokia Transfer and Stock Transfers used wires, Plaintiff alleges that the transfers constitute mail fraud and wire fraud, respectively. Thus, Plaintiff alleges that the asset transfers constitute racketeering activity as defined in 18 U.S.C. § 1961(1), and that the transfers in totality comprise the "pattern of racketeering activity" needed for a RICO claim*. Id*. ¶ 20.

Plaintiff alleges that Defendants formed an "association-in-fact enterprise" – the "Greely Enterprise" – and that Defendants were associated together for the common purpose of intentionally and willfully defrauding her through the asset transfers so that she could not collect the Judgment from Albert's assets. *Id*. ¶¶ 22, 23. Plaintiff alleges that both Defendants agreed to and did conduct and participate in the Greely Enterprise, and that as a "direct and proximate consequence she has been injured in her property because she has been unable to reach Albert's share" of the transferred assets. *Id*. ¶¶ 25, 28.

**B. Procedural History**

Plaintiff initiated this action in federal court on March 3, 2026. However, before doing so, Plaintiff brought an action in Santa Clara County Superior Court, asserting state law claims for avoidance of fraudulent transfers under California Civil Code § 3439.04(a)(1) and § 3439.05 based on the same facts at issue here. *See* Swiderski Decl. at 2-3, ECF No. 18-1. The state court

action was filed on August 6, 2024, and was set for a trial date of November 30, 2026.[1] *Id.* at 94-95. Plaintiff voluntarily dismissed the state court action on March 3, 2026 – the same day this action was filed. *See* Mot. to Dismiss at 23.

In this case, Plaintiff asserts two RICO violations for conducting an enterprise's affairs through a pattern of racketeering activity, 18 U.S.C. § 1962(c), and for conspiracy, 18 U.S.C. § 1962(d). *See* Compl. ¶¶ 15-37. Plaintiff also reasserts the state law claims that were at issue in the now-dismissed state court action. Defendants move to dismiss the RICO claim for failure to state a claim, and they seek dismissal of the state law claims for lack of supplemental jurisdiction, assuming that the RICO claim is dismissed.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Additionally, to satisfy Rule 9(b), "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation modified).

[1] Defendants' unopposed request for judicial notice is GRANTED. *See* Swiderski Decl. ¶ 6. The Court "may take judicial notice of court filings" in other cases "[t]o determine what issues were actually litigated." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

If the court finds that dismissal pursuant to Rule 12(b)(6) is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III. DISCUSSION

To plausibly state a RICO claim, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to business or property. *Odom v. Microsoft Corp*., 486 F.3d 541, 547-48 (9th Cir. 2007) (en banc). The fourth element – racketeering activity – requires the plaintiff to plausibly allege one or more predicate acts enumerated in 18 U.S.C. § 1961(1). In this case, the RICO claim is premised on mail and wire fraud. Although the parties address other RICO elements in their briefs, the failure to plausibly allege predicate acts is dispositive, thus the Court focuses on this threshold issue.

### A. Plaintiff Fails to Plausibly Allege Mail or Wire Fraud

In order to state a claim for mail or wire fraud under 18 U.S.C § 1341 and § 1343, Plaintiff must allege facts that plausibly demonstrate: "(1) a scheme to defraud, (2) the use of either the mail or wire, radio, or television to further the scheme, and (3) the specific intent to defraud." *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017). The element that is disputed by Plaintiffs and Defendants is the first element – the "scheme to defraud."

A "scheme to defraud" covers "any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." *Id*. (quoting *Carpenter v. United States*, 484 U.S. 19, 27 (1987)). The Ninth Circuit has held that a scheme to defraud requires "the intent to deceive *and* cheat – in other words, to deprive the victim of money or property by means of deception." *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020). The plaintiff must plausibly allege that the scheme is "reasonably calculated to deceive." *United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003). A defendant's overall conduct can constitute a scheme to defraud, even if the plaintiff fails to identify a "specific false statement or a specific omission." *Id*. at 999. The mail or wire communication itself need not contain a false statement,

but the use of mail or wires must be "incident to an essential part of the scheme." *Schmuck v. United States*, 489 U.S. 709, 711-12 (1989).

Here, the complaint does not contain sufficient factual allegations demonstrating a scheme that is "reasonably calculated to deceive," *Woods*, 335 F.3d at 997-99, or "false or fraudulent pretenses, representations, or promises" by either Defendant, *Brugnara*, 856 F.3d at 1207. The allegations in the complaint are conclusory. Plaintiff alleges that: the transfers were executed "so that Plaintiff could not collect the [divorce] Judgment from Albert's assets," Compl. ¶ 23; the transfers were made for "the unlawful purpose of intentionally defrauding Plaintiff and hindering her efforts to enforce the Judgment," *id* ¶ 25; and "Defendants fraudulently executed the Greely Transfers, which acts constituted wire fraud or mail fraud," *id* ¶ 26. These bare conclusions do not explain how the transfers were part of a scheme that is reasonably calculated to deceive anyone, nor do they reflect any false pretenses, representations, or promises. Instead, Plaintiff appears to assert that the transfers are fraudulent merely because they placed assets beyond Plaintiff's reach.

As Defendants correctly note, the complaint is devoid of allegations of "what was not disclosed that should have been disclosed, and how the deception led to the Plaintiff's frustrated efforts to collect on her judgment." Mot. to Dismiss at 9-10. Plaintiff does not allege that Albert lacked a legal right to transfer the assets in question, or that Albert and Jenny engaged in any misrepresentations or deceit in carrying out the transactions.[2] To the contrary, the complaint suggests that the transfers were made openly between Albert and Jenny, not covertly or to sham entities, or by defrauding third parties. Due to the absence of any facts or specifics of Defendants' fraudulent pretenses, representations, or promises, Plaintiff's complaint fails to show a "scheme or artifice to defraud." *Woods*, 335 F.3d at 997-99.

Resisting dismissal, Plaintiff relies on several RICO cases that involved sham transfers designed to hide or shield assets. However, these cases are distinguishable because the transfers were part of a broader scheme to defraud, or the transfers involved deception. In the leading case, *United States v. Feldman*, the defendant committed arson to defraud insurers and used fraudulent

---

[2] Plaintiff alleges that certain transfers were made without consideration. *See* Compl. ¶¶ 12, 14. Although these allegations may suggest an improper motive, they do not establish deception.

transfers "to keep the ill-gotten gains . . . concealed." 853 F.2d 648, 654 (9th Cir. 1988). The transfers were part of a broader fraudulent scheme, *and* the transfers involved deception because they were carried out using "aliases and straw corporations." *Id*. at 653.

The other cases Plaintiff cites are also distinguishable. Plaintiff cites *Gonzalez v. Hadid*, No. LA CV17-05765 JAK (PLAx), 2018 WL 11474122 (C.D. Cal. June 22, 2018), to argue that "concealing assets from judgment creditors can constitute mail or wire fraud." Opp. at 4. However, the transfers in *Gonzalez* were part of a broader fraudulent scheme to deprive employees of their earned wages. *Gonzalez*, 2018 WL 11474122, at *3. Plaintiff cites *Gutierrez v. Givens*, 1 F. Supp. 2d 1077 (S.D. Cal. 1997), to argue that transfers need not contain a specific misrepresentation to constitute mail or wire fraud. Opp. at 4. Yet, in *Guiterrez*, the defendant was subject to a judgment that enjoined him from "transferring, encumbering or selling" any assets, which he evaded by fraudulently using financial institutions that he secretly controlled. *Gutierrez*, 1 F. Supp. 2d at 1079-80. Finally, Plaintiff cites *Monterey Bay Military Housing LLC v. Pinnacle Monterey LLC*, No. 14-cv-03953-BLF, 2015 WL 1737691 (N.D. Cal. Apr. 13, 2015), for the proposition that "a defendant's fraudulent transfer of property in advance of a looming judgment could qualify as wire fraud or mail fraud." Opp. at 3. But that case involved a motion for leave to supplement a complaint where the plaintiffs had "already alleged a civil RICO claim" based on a broader scheme. *Monterey Bay Military Housing*, 2015 WL 1737691, at *3. The court granted leave to amend without expressly deciding whether the transfers constituted separate acts of mail or wire fraud. *See id*. (noting that the "use of the wires and mail to carry out the alleged fraudulent transfer *may* constitute wire fraud or mail fraud" (emphasis added)). In sum, none of these cases support finding a plausible RICO claim based on Plaintiff's conclusory allegations.

**B. Dismissal is With Leave to Amend**

In advance of the motion hearing, the Court provided the parties with a tentative ruling, indicating that the Court was inclined to grant the motion to dismiss. The Court also instructed Plaintiff to identify additional facts that may be alleged if leave to amend is granted. It is doubtful that Plaintiff can cure the pleading deficiencies discussed above based on the limited additional allegations that Plaintiff referenced at the hearing. However, the Court grants leave to amend

because this is its first ruling on the legal sufficiency of the complaint, and the Court cannot conclude that amendment would be futile. *See Lopez*, 203 F.3d at 1127 (holding that the "court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (citation modified)). However, the Court may dismiss Plaintiff's RICO claim without granting further leave if the amended complaint fails to state a RICO claim. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding that failure to correct pleading deficiencies after dismissal is a "strong indication" that further amendment would be futile (citation and quote marks omitted)); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." (citation omitted)).

In their motion to dismiss, Defendants raised additional grounds for dismissal of the RICO claim. The Court does not reach these issues because the pleading deficiencies discussed above were dispositive, but Plaintiff should consider these issues when amending the complaint. Additionally, Defendants moved to dismiss the state law claims for lack of supplemental jurisdiction. Because the Court grants leave to amend the RICO claim, dismissal of the remaining claims for lack of supplemental jurisdiction would be premature. The Court reserves judgment on this issue.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiffs may file an amended complaint, along with a redline comparing it to the original complaint, within fourteen days of this Order.

**IT IS SO ORDERED.**

Dated: July 16, 2026

Eumi K. Lee
United States District Judge